**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **2: 05-cr-0385** |
| **v.** | ) | **2: 12-cv-0282** |
| | ) | |
| **JELANI SOLOMON** | ) | |

**MEMORANDUM OPINION AND ORDER**

Presently before the Court for disposition is the MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY, with MEMORANDUM OF LAW AND AMENDED MEMORANDUM OF LAW in support filed *pro se* by Petitioner / Defendant Jelani Solomon ("Solomon") (*ECF Nos. 839, 840, and 848*), the RESPONSE in opposition filed by the government (*ECF No. 883*), and the REPLY TO GOVERNMENT'S RESPONSE filed by Solomon (*ECF No. 888).*

For the reasons discussed below, the Court will deny the § 2255 motion without holding an evidentiary hearing.

The relief sought under 28 U.S.C. § 2255 is reserved for extraordinary circumstances. *See Brecht v. Abrahamson*, 507 U.S. 619 (1993). Section 2255 provides, in relevant part:

> A prisoner in custody under sentence of a [federal] court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Although § 2255 includes a provision for a prompt evidentiary hearing, a federal court may deny a § 2255 motion without holding an evidentiary hearing if the "motion and the files and records of the case conclusively show" that the petitioner is not entitled to relief. 28 U.S.C.

1

§ 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255.

PROCEDURAL AND FACTUAL BACKGROUND

The parties and the Court are familiar with the extensive background facts of Solomon's criminal prosecution, conviction, sentence, and appeal. Therefore, the Court will not detail the facts again. However, the following is a brief recitation of the procedural facts salient to the issues presently pending before the Court.

On March 28, 2006, a federal grand jury sitting in the Western District of Pennsylvania returned a nine-count Superseding Indictment against Solomon, Wanda Solomon (his mother) ("W. Solomon"), and Claron Hanner (his sister's boyfriend) ("Hanner"), which also contained forfeiture allegations against Solomon and W. Solomon. Solomon was charged in seven (7) counts, as follows:

Count One - Conspiracy to Distribute and Possess with Intent to Distribute 5 Kilograms or More of Cocaine, in violation of Title 21, United States Code, § 846 and Title 18, United States Code, § 2;

Count Two - Receipt of a Firearm by a Person Under Indictment in violation of Title 18, United States Code, Section 922(n);

Count Three - Carrying and Using a Firearm During and In Relation To a Drug Trafficking Crime, in violation of Title 18, United States Code, § 922(g)(1);

Count Four - Possession of a Firearm by a Convicted Felon, in violation of Title 18, United States Code, section 922(g)(1);

Count Six - Using a Firearm During and In Relation to a Drug Trafficking Crime and Causing the Death of a Person Through the Use of Said Firearm, in violation of Title 18, United States Code, §§ 924(c)(1)(A), 924(j)(1), and 2;

Count Seven - Possession with Intent to Distribute and Distribute Less Than 500 Grams of Cocaine, in violation of Title 21, United States Code, §§ 841(a)(1) and 841(b)(1)(C); and

Count Eight - Possession with Intent to Distribute and Distribute 500 Grams or More of Cocaine, in violation of Title 21, United States Code, §§ 841(a)(1) and 841(b)(1)(B)(ii).

On December 29, 2006, the government filed a Notice to Seek Death Penalty against both Solomon and Hanner.

On August 2, 2006, W. Solomon appeared before the Court and entered a plea of guilty to Count One of the Superseding Indictment.[1] On March 20, 2007, a sentencing hearing was conducted at which time W. Solomon was sentenced by the Court and committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 240 months, to be followed by five (5) years of Supervised Release. W. Solomon appealed her conviction and sentence, which were affirmed by the United States Court of Appeals for the Third Circuit on May 22, 2009. On March 24, 2011, W. Solomon filed a Motion to Vacate Under 28 U.S.C. § 2255, which the Court denied as untimely by Memorandum Order on April 26, 2011. W. Solomon appealed that decision, which was affirmed by the United States Court of Appeals on July 29, 2011.

---

[1] W. Solomon also pled guilty to a count from an earlier indictment that charged her with conspiracy to distribute crack cocaine.

On June 26, 2007, Hanner appeared before the Court and entered a plea of guilty to Count Six of the Superseding Indictment.[2] On June 11, 2008, a sentencing hearing was conducted at which time Hanner was sentenced by the Court and committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 300 months, to be followed by five (5) years of Supervised Release. Restitution in the amount of $103,748.25 was ordered. No appeal was taken from this sentence.

Solomon elected to proceed to trial and on October 9, 2007, a jury trial commenced on the merits phase of the charges which concluded on October 23, 2007, with the jury having found him guilty beyond a reasonable doubt on Counts One, Two, Three, Four, Six, and Seven of the Superseding Indictment.[3] On November 5, 2007, at the conclusion of the penalty phase of the trial, the jury determined that Solomon should be sentenced to life imprisonment without the possibility of release at Count Six of the Superseding Indictment.

On June 17, 2008, a sentencing hearing was conducted by the Court at which time Solomon was sentenced and committed to the custody of the United States Bureau of Prisons as follows: at Count One for life; at Count Two for a term of sixty (60) months; at Count Three for a term of 120 months; at Count Four for a term of 120 months; at Count Six, for a term of life without the possibility of release, and at Count Seven for a term of 240 months. The terms at Counts One, Two, Four, and Seven are to be served concurrently with the Life term imposed at Count Six. The term at Count Three is to be served consecutively to the Life Term at Count Six. Additionally, restitution in the amount of $103,748.25 was ordered.

---

[2] Hanner also pled guilty to a count from an earlier indictment that charged him with felon in possession of a firearm.

[3] Prior to the commencement of trial, Count Eight was dismissed on motion of the government. *See* Text Order of October 6, 2007 which granted the government's Motion to Dismiss Count Eight (ECF No. 639).

On June 26, 2008, Solomon filed a Notice of Appeal of his conviction. On appeal, through counsel, Solomon raised three issues: (i) whether the District Court, pursuant to 18 U.S.C. § 3432, properly exercised its discretion to empanel a partially innominate jury; (ii) whether sufficient evidence supported his conviction at Count One; and (iii) whether sufficient evidence supported his conviction at Count Six. On July 23, 2010, our appellate court affirmed Solomon's conviction and sentence finding that (i) the use of a partially innominate jury was proper and (ii) "the evidence introduced at trial was undoubtedly sufficient to support convictions on Counts One and Six." *United States v. Solomon*, 387 Fed. App'x 258, 262 (3d Cir. 2010), *cert. denied*, 131 S. Ct. 1622 (March 7, 2011), *pet. for rehearing denied*, 131 S. Ct. 2484 (May 16, 2011).

On March 6, 2012, Solomon, *pro se*, filed the instant motion in which he claims prosecutorial misconduct, raises a number of ineffective assistance of counsel claims against his trial and appellate attorneys, and argues that the Court committed a number of "trial errors" and lacked jurisdiction to sentence him on Count 3. Each of Solomon's claims have several subclaims, which will be hereinafter addressed.

### EVIDENTIARY HEARING

Under 28 U.S.C. § 2255, a judge must determine whether to summarily dismiss the petition under Rule 4(b) of the Rules Governing § 2255 Proceedings ("If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party."), or to order an evidentiary hearing under Rule 8 of the Rules Governing § 2255 Proceedings.

A district court should hold an evidentiary hearing in section 2255 cases unless "the motion, files and records show conclusively that the movant is not entitled to relief." *United States v. Nahodil*, 36 F.3d 323 (3d Cir. 1994). In deciding whether to hold a hearing, the trial court judge may draw upon his own personal knowledge and recollection of the trial when considering the factual allegations of a § 2255 motion that relate to events that occurred in the judge's presence. *See Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1077 (3d Cir. 1985).

After reviewing the filings in this case, the complete record, and drawing upon the Court's personal knowledge and recollection of the events that occurred in its presence, the Court finds that an evidentiary hearing is not required because the allegations made by Solomon "cannot be accepted as true because they are: contradicted by the record, inherently incredible, and/or conclusions rather than statements of fact." *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005) Additionally, the files and records of the case conclusively establish that Solomon is not entitled to relief. *United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005). Therefore, the Court will proceed to the merits of the § 2255 motion.[4]

## STANDARD OF REVIEW

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel and exists "in order to protect the fundamental right to a fair trial." *Lockhart v. Fretwall*, 506 U.S. 364, 368 (1993) (*quoting Strickland v. Washington*, 466 U.S. 668, 684 (1984)).

---

[4] "When a motion is made under § 2255, the question of whether to order a hearing is committed to the sound discretion of the district court." *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).

"[A] habeas petitioner claiming a deprivation of his or her Sixth Amendment right to effective assistance of counsel must show that: (1) counsel's performance was deficient; and (2) (ii) counsel's deficient performance caused the petitioner prejudice." *Ross v. District Attorney of the County of Allegheny*, 672 F.3d 198, 209-10 (3d Cir. 2012) (citing *Strickland,* 466 U.S. at 687). A defendant faces a high bar in bringing an ineffective assistance of counsel claim. *Padilla v. Kentucky,* --- U.S. ---, 103 S. Ct. 1473, 1485 (2010).

To prove deficient performance, a defendant " 'must show that counsel's representation fell below an objective standard of reasonableness. . . . The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.' "*Ross*, 672 F.3d at 210 (*quoting Harrington v. Richter*, ─── U.S. ───, ───, 131 S. Ct. 770, 787 (2011). In analyzing whether counsel comported with professional standards, a court should be "highly deferential," " 'indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Booth*, 432 F.3d at 546 (*quoting Strickland*, 466 U.S. at 688–89)).

To prove prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler v. Cooper,* – U.S. —, —, 132 S. Ct. 1376, 1384 (2012) (quotation and citation omitted). A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. *Gooding v. Wynder*, 459 Fed. App'x 83, 86 (3d Cir. 2012) (quoting *Strickland*, 466 U.S. at 694).

As noted, to prevail on an ineffective assistance of counsel claim, a defendant must demonstrate both deficient performance and prejudice. *Strickland*, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

The Court of Appeals for the Third Circuit has endorsed the practical suggestion in *Strickland* to consider the prejudice prong before examining the performance prong "because this course of action is less burdensome to defense counsel." *United States v. McCoy*, 410 F.3d 124, 132 n.6 (3d Cir. 2005); *see Strickland*, 466 U.S. at 694 (stating that, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so," the prejudice prong should be examined before the performance prong "to ensure that ineffectiveness claims do not become so burdensome to defense counsel that the entire criminal justice system suffers as a result").

Furthermore, the United States Supreme Court has determined that under the *Strickland* test, a reviewing court must "assess counsel's overall performance throughout the case to determine whether the 'identified acts or omissions' overcome the presumption that counsel rendered reasonable professional performance." *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986).

## DISCUSSION

### A.  Procedural Default

Prior to addressing the merits of each of Solomon's claims, the Court should consider if such claims are procedurally barred. *See United States v. Essig*, 10 F.3d 968, 976 (3d Cir. 1993). A petitioner under § 2255 is procedurally barred from bringing any claims on collateral review which could have been, but were not, raised on direct review. *See Bousley v. United States*, 523 U.S. 614, 621 (1998) (exception to procedural default rule for claims that could not be presented without further factual development); *United States v. Biberfeld*, 957 F.2d 98, 104 (3d Cir. 1992). Once claims have been procedurally defaulted, the petitioner can only overcome the procedural bar "if he can prove either that he is actually innocent of the crime for which he was

convicted, or that there is a valid `cause' for the default, as well as prejudice resulting from the default." *Hodge v. United States*, 554 F.3d 373, 379 (3d Cir. 2009) (*citing Bousley*, 523 U.S. at 622). *See Biberfeld*, 957 F.2d at 104 (stating "cause and prejudice" standard).

In this context, "cause" consists of "something external to the petitioner, something that cannot be fairly attributable to him," and "prejudice" requires a showing that the alleged error "worked to his actual and substantial disadvantage infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 45 U.S. 152, 170 (1982). To establish "actual innocence," as an alternative way to resuscitate a procedurally defaulted claim, "petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley,* 523 U.S. at 623.

As stated above, Solomon raises a number of grounds for ineffective assistance of both his trial and appellate counsel, but he also raises a number of new claims, which he did not raise at trial, sentencing, or on direct appeal. Specifically, Solomon contends that the Assistant U.S. Attorney ("AUSA") committed prosecutorial misconduct in a myriad of ways, that the Court committed a number of "trial errors," and that the Court lacked jurisdiction to sentence him on Count 3.

The Court finds that the facts underpinning Solomon's "new claims" were or should have been known to him at the time of his trial and sentencing. Thus, Solomon could have litigated this aspect of his prosecutorial misconduct and Court "trial errors" claims in a direct appeal, but failed to do so. Further, Solomon has not shown that any factor external to the defense prevented him from litigating this issue in a direct appeal nor has he demonstrated prejudice. More

significantly, Solomon has not asserted that he is innocent of any of the crimes for which he was convicted.[5]

For these reasons, the Court concludes that all of Solomon's "new claims" are procedurally barred.  However, rather than reject these claims on a waiver basis, the Court prefers to address the claims on their merits.  Accordingly, the Court will analyze seriatim each of  the claims Solomon has raised in the instant § 2255 motion.

**B.      Claims of Prosecutorial Misconduct**

Solomon alleges that a wide array of actions by Assistant United States Attorney Tina O. Miller amounted to prosecutorial misconduct which resulted in the denial of his  constitutional right to a fair trial.  In order to prevail on a claim of prosecutorial misconduct, a petitioner must demonstrate that the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden v. Wainwright*, 477 U.S. 68, 181 (1986).

1.      Defendant's first claim of prosecutorial misconduct surrounds statements made, and later recanted, by David Robinson ("Robinson").[6]   Robinson provided information to investigating authorities about a drug deal with Solomon.  He also told  investigating authorities that Solomon had paid him to be the lookout during the murder of Frank Helisek, Jr.

On September 8, 2007, though, Robinson notified authorities that he had not been truthful with regard to his professed role as the paid lookout for the murder.  On September 22, 2007, the government informed defense counsel that Robinson would not be a witness at trial

---

[5]  However, a claim of "actual innocence" by Solomon at this juncture, which in substance would be a challenge to the sufficiency of the evidence, would be precluded by the finding of the United States Court of Appeals that the evidence at trial was sufficient to support his conviction.
[6]  Actually, Defendant's first two claims of prosecutorial misconduct overlap, as each involves claims surrounding David Robinson's recanted statements.

and that he had "recently informed us that his statements concerning being a lookout for the Helisek homicide were untrue and that he had no role in the homicide, . . . ." Govt's Br., Exh. 1.

Solomon argues that the prosecutor committed prosecutorial misconduct because "versions of [David Robinson's] testimony were used by the government and its agents, presented to the grand jury as facts, and found reliable by the grand jury for indictment." Br. at 12. Specifically, Solomon maintains that Robinson's change of story rendered infirm the testimony given to the grand jury by Pennsylvania State Trooper Michael C. Warfield and Detective Robert R. Heberle, Jr.

According to Solomon "[a]bsent David Robinson's testimony and the government's false information the grand jury would not have found cause to indict the petitioner and charge a violation of Title 18 U.S.C. 924(c) and (j)." Br. at 7. However, this contention completely overlooks the fact that the grand jury heard testimony that Solomon had paid Claron Hanner to murder Frank Helisek, Jr. The issue of whether or not Robinson had acted as a lookout would not have changed the probable cause which supported the indictment. *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989) ("a grand jury indictment or presentation constitutes prima facie evidence of probable cause to prosecute . . . .).

Moreover, at the time Trooper Michael C. Warfield and Detective Robert R. Heberle, Jr., testified before the grand jury they had no reason to believe that the information previously provided to them by David Robinson was not correct. Robinson did not change his story until September 8, 2007, well after the time Trooper Warfield and Detective Heberle testified before the Grand Jury.[7]

---

[7] The records reflects that Trooper Warfield testified before the Grand Jury on December 14, 2005, and that Detective Heberle testified before the Grand Jury on January 17-18, 2006. *See* Exhibits 7 and 10, appended to Solomon's Memorandum of Law (ECF No. 840).

Finally, assuming *arguendo* that Trooper Warfield and/or Detective Heberle had presented false and misleading testimony to the grand jury, the petit jury's guilty verdict "cured any defect in the grand jury proceeding and rendered any misconduct harmless." *United States v. Muhammad*, 336 Fed. App'x 188, 193 (3d Cir. 2009) (citing *United States v. Console*, 13 F.3d 641, 672 (3d Cir. 1993). As the United States Supreme Court explained in *United States v. Merchanik*, 475 U.S. 66 (1986), even where prosecutorial misconduct may have affected the grand jury's decision to indict certain defendants:

> the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

*Id.* at 70.

The Court finds that there was ample and well-documented evidence supporting the grand jury's finding of probable cause to indict Solomon and that "the evidence introduced at trial was undoubtedly sufficient to support convictions on Counts One and Six . . . ." *United States v. Solomon*, 387 Fed. App'x. 258 (3d Cir. 2010), *cert. denied,* -- U.S. --, 131 S. Ct. 1622; *pet. for rehearing denied*, -- U.S. --, 131 S. Ct. 2482 (2011).

Accordingly, the Court finds Solomon's claim to be without merit.

2.     Next, Solomon contends that the AUSA committed prosecutorial misconduct because she (i) failed to disclose, as required by *Brady,* David Robinson's grand jury testimony and (ii) failed to inform defense counsel of the change in Robinson's story. Solomon's argument fails for two simple reasons. Initially, according to the government, David Robinson <u>never</u> testified before the grand jury; therefore, there was no failure to disclose. Additionally, according to the record evidence, the government learned of Robinson's change in his story on

12

September 8, 2007.  Approximately two (2) weeks later, on September 22, 2007, the AUSA

wrote defense counsel and stated, *inter alia*:

> Mr. Robinson recently informed us that his statements concerning being a lookout
> for the Helisek homicide were untrue and that he had no role in the homicide,
> other than that Jelani Solomon called him around 12:00 a.m. (after the Helisek
> homicide) and asked him to come to the barbershop, which he did. . . .
>
> After Mr. Robinson recanted his story, I reviewed his trial testimony during the
> case of United States of America v. Cynthia Walker and Curtis Carter.  Mr.
> Robinson was asked during his testimony if he was the lookout for a homicide
> and he indicated that he was.  I will forward a copy of that testimony, along with
> all relevant reports, to you.

Govt's Response, Exhibit 1 (ECF No. 883-1).  The Court finds that the government promptly

informed Solomon's defense counsel of the change in Robinson's story and thus, this claim fails

as being without merit.

      3.     Solomon's third  claim of prosecutorial misconduct is that "the prosecutor misled

the court when she told the court that Count 8 of the superseding indictment was not relevant to

their case in chief and should not go out to the jury for it is irrelevant to their deliberation."  Br.

at 14.  The trial transcript demonstrates that Solomon has grossly mischaracterized the comments

made by the AUSA.

      Count Eight of the Superseding Indictment was dismissed on October 6, 2007,

when the Court granted the government's Motion to Dismiss Count Eight (ECF No. 639).  No

reasons for seeking the dismissal of Count Eight were given by the government.  Count Eight

was dismissed before the trial in this case commenced and thus the jury never heard any

description, testimony or argument regarding Count Eight.

      During the Charge Conference, the AUSA requested that the Court not instruct

the jury that Count Eight had been dismissed and requested that the Court "send out only those

portions of the superseding indictment that are relevant to their deliberations.  So it would

exclude Mr. Hanner's charges and it would exclude Count 8, which was the drug distribution count. . . . " Transcript of Jury Trial Proceedings at 24, ECF No. 859. Without objection from defense counsel, the Court granted the government's request. A review of the transcript in its entirety confirms that the AUSA never misled the Court as to why Count Eight was dismissed.

4.      In his fourth claim of prosecutorial misconduct, Solomon claims that the AUSA "suppressed testimony provided by Anthony Moore, Rodley Akins, Cadee Akins, George Mali, Louis Richardson, and Paul Gettlemen" because parts of their grand jury testimony was redacted. Solomon argues that "[t]his evidence could have been exculpatory in nature and [the government's] suppression deprived the defendant of an opportunity to investigate a possible line of defense. That prosecution clearly violated the ruling in Brady,[8] the evidence was material to the petitioner's defense." Br. at 16.

To establish a *Brady* due process violation, a defendant must show that "(1) evidence was suppressed; (2) the suppressed evidence was favorable to the defendant; and, (3) the suppressed evidence was either material to guilt or to punishment." *United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir. 2005). However, "the government is not obliged under *Brady* to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself." *United States v. Starusko,* 729 F.2d 256 (3d Cir. 1984).

Under *Brady* and its progeny, prosecutors have an affirmative duty to disclose evidence that would "tend to exculpate" the defendant or "reduce the penalty" to be imposed upon him. *Brady*, 373 U.S. at 87–88. *Brady* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is

---

[8] *Brady v. Maryland*, 373 U.S. 83 (1963)

material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87.

"There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). *See also United States v. Pelullo,* 399 F.3d 197, 209 (3d Cir. 2005). "Evidence is material 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *United States v. Friedman*, 65 F.3d 342, 357 (3d Cir. 2011) (citing *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

Application of these principles to the instant case is not difficult. Solomon's assertions that the redacted transcripts "could have been exculpatory in nature" amount to nothing more than bald assertions and conclusory allegations. Additionally, Solomon cannot show that the government suppressed any exculpatory evidence. The government produced to defense counsel the grand jury transcripts before trial, and defense counsel had a full opportunity to challenge the redactions, if warranted. *See United States v. Montgomery*, 210 F.3d 446, 452 (5th Cir. 2000) (noting that an in-camera review is available when defendant seeks such review to confirm that redactions were proper).

Thus, the Court finds that the redaction of the grand jury testimony by the government is not a *Brady* violation and Solomon's claim must be denied.

5.     In his fifth claim of prosecutorial misconduct, Solomon claims that the prosecutor knowingly presented perjured testimony at trial from Harold Novick, Wayne Thompson, Claron Hanner, Khaliah Solomon, Glenn Clark, and Keith Edwards.   Br. at 12, 16.

"If a prosecutor uses testimony it knows or should know is perjury, it is fundamentally unfair to an accused." *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992).

Other than Solomon's own statement that these witnesses were lying under oath, there is no evidence whatsoever that the trial testimony was perjured or false. Any inconsistencies between the witnesses' prior statements and/or grand jury testimony and their trial testimony was the subject of extensive cross-examination.

The jurors heard the allegedly inconsistent and perjured statements and had the opportunity to weigh the credibility of each witness. The jurors were instructed, *inter alia,* as follows:

> You have heard the testimony of certain witnesses allegedly impeached with a prior inconsistent statement. You have also heard that before this trial these witnesses made statements that may be different from their testimony in this trial. It is up to you to determine whether these statements were made and whether they were different from the witnesses' testimony in this trial. These earlier statements were brought to your attention only to help you decide whether to believe the witnesses testimony here at trial. You cannot use it as proof of the truth of what the witnesses said in the earlier statements. You can only use it as one way of evaluating the witnesses' testimony in this trial.

> You also heard evidence that certain witnesses made statements before this trial that were made under oath or given before the grand jury and that may be different from his or her testimony at trial. When a statement is made under oath or made before the grand jury, you may not only use it to help you decide whether you believe the witnesses' testimony in this trial but you may also use it as evidence of the truth of what the witnesses said in the earlier statements. But when a statement is not made under oath or not given before the grand jury, you may use it only to help you to decide whether you believe the witnesses' testimony in this trial and not as proof of the truth of what the witnesses said in the earlier statements.

For this reason, the Court finds that Solomon has not made a cognizable claim and his fifth claim of prosecutorial misconduct must be denied.

6.    In his sixth claim of prosecutorial misconduct, Solomon alleges that the prosecutor committed a violation of the Fourth and Sixth Amendments because the prosecutor improperly used information obtained when Shawn Bazmore wore a wire in an attempt to obtain information from Solomon while the two men were incarcerated at SCI Mercer.  The Court finds that Solomon's claim is without merit.

Shawn Bazmore testified that because was "looking to help his brother out" with his own case, he agreed to wear the wire for the State Attorney General's office.  Transcript of Jury Trial Proceedings at 185 (ECF No. 856).  Therefore, no Fourth Amendment right was implicated because Bazmore consented to wear the wire.

Solomon's Sixth Amendment claim is likewise without merit.  Solomon does not articulate a specific implication of any aspect of the Sixth Amendment caused by the consensual wire; thus, his claim necessarily fails as vague and conclusory.  Furthermore, the conversations at issue between Bazmore and Solomon occurred in early 2005, ECF No. 856 at 179 - 190, significantly prior to the Grand Jury returning a one-count indictment against Solomon on December 14, 2005.[9]  It is axiomatic that the Sixth Amendment right to counsel attaches only with "the initiation of adversarial judicial proceedings" against a suspect -- whether by way of formal charge, preliminary hearing, indictment or information, or arraignment. *United States v. Gouveia*, 467 U.S. 180, 188 (1984)).

Thus, Solomon's claim of prosecutorial misconduct must be denied.

7.    In his seventh claim of prosecutorial misconduct, Solomon claims that the government improperly "vouched for witnesses during her closing argument."  Br. at 20.

---

[9]  On March 28, 2006, a federal grand jury returned a nine-count Superseding Indictment against Solomon, Claron Hanner, and W. Solomon.  ECF No. 26.

The Court of Appeals for the Third Circuit has given prosecutors "considerable latitude" in laying out the evidence and suggesting to a jury that they may draw permissible inferences from the evidence. *See United States v. Green*, 25 F.3d 206, 210 (3d Cir. 1994); *United States v. Werme*, 939 F.2d 108, 117 (3d Cir. 1991). A prosecutor may not vouch for the credibility of a witness based on the prosecutor's knowledge, experience, or opinions. *United States v. Young,* 470 U.S. 1, 18-19 (1985). Improper prosecutorial vouching occurs when the prosecutor assures the jury that the testimony of a Government's witness is credible, and this assurance is based on either the prosecutor's personal knowledge or other information not contained in the record. *United States v. Lee*, 61 F.3d 170, 195 (3d Cir. 2010) (quoting *United States v. Walker*, 155 F.3d 180, 1987 (3d Cir. 1998)).

The Court has examined the record as referenced by Solomon and finds his argument to be without merit. While undeniably the AUSA's comments were not favorable to Solomon, they did not rise to a level that could be considered misconduct. It is not prosecutorial misconduct for the prosecutor to suggest that the jury evaluate a witness's credibility. The Court concludes that the prosecutor's statements during closing did not deprive Solomon of a fair trial.

Thus, Solomon's seventh claim of prosecutorial misconduct must be denied.

8. In his eighth claim of prosecutorial misconduct, Solomon alleges that the AUSA failed to correct "false information" about his drug dealings with Paul Dudash. Specifically, Solomon objects to that portion of the Presentence Investigation Report which indicates that in late March or April, 1998, Solomon gave Paul Dudash money to receive six pounds of marijuana. Solomon contends this is clearly false information as he was a "resident at the New Castle Youth Development Center from September 10, 1997 through May 28, 1998." Br. at 22.

There is no question that the due process clause provides convicted defendants with the right to be sentenced on the basis of accurate information. A two-part test must be satisfied in order to sustain a claim that a sentence imposed after conviction violates due process: (i) has misinformation of a constitutional magnitude been given to the district court; and (ii) has that misinformation been given specific consideration by the sentencing judge. *United States v. Matthews*, 773 F.2d 48, 51 (3d Cir. 1985).

Solomon offers no evidence to support his claim other than the general conclusory allegation that the statement is false simply because he "was a resident at the New Castle Youth Development Center" at the time. Furthermore, Solomon has failed to demonstrate that even if true, this misinformation "so infected his sentence hearing, that it resulted in a fundamental miscarriage of justice." *United States v. Kovic*, 830 F.2d 680, 685 (7th Cir. 1987). Solomon was sentenced by the Court based solely on the jury's finding that he was guilty of the charges set forth in the Superseding Indictment. Solomon's claim that inaccurate information in the presentence investigation report makes the sentence imposed subject to collateral attack is clearly frivolous.

9.     Solomon's ninth claim of prosecutorial misconduct is that the government obtained his juvenile records without a court order in violation of 18 U.S.C. § 5038. This claim is without merit. Section 5038 establishes a policy for nondisclosure of juvenile records upon completion of "the juvenile delinquency proceeding." 18 U.S.C. § 5038(a). Section 5031 defines "juvenile delinquency" as a "violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult." *Id.* at ¶ 5031. Section 5032 establishes procedures to determine delinquency proceedings in federal district court. "Read in the context of these sections, the phrase 'juvenile delinquency

proceeding' in section 5038(a) is clearly a reference to a federal delinquency proceeding."
*McDonnell v. United States*, 4 F.3d 1227, 1249 (3d Cir. 1993).  Because Solomon's juvenile records are Pennsylvania state juvenile records, they do not fall within the purview of § 5038.

Thus Solomon's ninth claim of prosecutorial misconduct fails.

10.     Solomon's tenth claim of prosecutorial misconduct is that the government withheld for over ten months information that it had "illegally recorded" privileged phone conversations between Solomon and his counsel.   This issue was fully litigated pre-trial.  *See United States v. Solomon*, 2007 WL 2702792 (W. D. Pa. Sept. 13, 2007).  The government acknowledged that the original CD which was provided to the government by the Washington County Correctional Facility ("WCCF") included phone calls from Solomon to one of his attorneys.  The government represented to the Court that those calls and the CD were not reviewed by counsel for the government.  Further, the Court was advised that the government, upon being apprised of these recordings, returned the original CD to the WCCF.  A new CD, which contained no attorney calls, was then provided to the government by the WCCF.  The government also advised the Court and defense counsel that it was not in possession of any recordings between Solomon and any of his attorneys nor did the government intend to use or reference any such recorded calls at trial.  Based on these representations, the Court found that it was not necessary to further address the issue.

Solomon now seems to be arguing that he was prejudiced by the alleged ten-month delay between the time of the actual recordings and the time that his counsel was informed of the existence of the recordings.  This claim can be rejected  outright.  The government represented that the recordings were not reviewed by counsel for the government.

Therefore, even if such a delay did occur, Solomon cannot show that he was prejudiced by any such delay.

11.     In his eleventh claim of prosecutorial misconduct, Solomon contends that the government misstated facts in its appellate brief when it apparently reported that Solomon sold Hanner a kilogram of cocaine.  However, on cross examination during trial, Hanner testified that he did not receive any kilogram(s) of cocaine from Solomon.  Br. at 22.  It appears that Solomon is alleging that this  misstatement of fact prejudiced the judges who affirmed his conviction.  The Court finds that it is highly improbable that this contested fact either (i) rose to the level of prosecutorial misconduct or (ii) rendered the affirmation of Solomon's conviction unreliable. As the appellate court stated, "[a]fter reviewing the extensive trial transcripts, particularly the cooperating witnesses' testimony, we find the evidence introduced at trial was undoubtedly sufficient to support convictions on Counts One and Six, and we therefore affirm these convictions." *United States v. Solomon,* 387 Fed. App'x 258, 261-262 (3d Cir. 2010), *cert. denied*, -- U.S. --, 131 S. Ct. 1622 (2011*), pet. for rehearing denied,* -- U.S. --, 131 S. Ct. 2484 (2011).

Thus, Solomon's eleventh claim of prosecutorial misconduct must be denied.

12.     Solomon's twelfth and final claim of prosecutorial misconduct is that the "cumulative effects" of the alleged prosecutorial misconduct resulted in a "violation of [his] constitutional rights, denial of due process, and the denial of a fair trial."  Br. at 23.

Individual miscues which alone do not create constitutional error may be viewed in the aggregate to establish constitutional error. *See Reid v. Vaughn*, 109 Fed. App'x 500 (3d Cir. 2004). "A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no

longer be determined to be harmless." *Cargle v. Mullin*, 317 F.3d 1196, 1206 (10th Cir. 2003).

Petitioner must establish that: "(1) at least two errors were committed in the course of the trial; [and] (2) considered together, along with the entire record, the multiple errors so infected the jury's deliberation that they denied [Petitioner] a fundamentally fair trial." *Vaughn*, 109 Fed. App'x at 500 (citing *Alvarez v. Boyd*, 225 F.3d 820, 824 (7th Cir.2000)).

As discussed at length *supra*, the Court has found that <u>no</u> prosecutorial misconduct occurred in this case and, assuming *arguendo*, that at least two errors had occurred, such conduct was not at all severe and cannot be said to have so infected the jury's deliberation that they denied Solomon a fundamentally fair trial.

In sum, Solomon's vague and general allegations do not establish that any of the actions of the AUSA constituted prosecutorial misconduct or that he was denied the right to a fair trial. Accordingly, the Court finds that Solomon's arguments of prosecutorial misconduct are without merit and will be denied.

## C.   <u>Claims of Ineffective Assistance of  Trial Counsel</u> [10]

### 1.   *Failure of Trial Counsel to Object to Prosecutorial Misconduct*[11]

Solomon utilizes a belt and suspenders approach arguing that his trial counsel was ineffective for failing to object to the above-described prosecutorial misconduct allegedly engaged in by the AUSA in this case. The Court finds the argument to be without merit as there was no prosecutorial misconduct in this case. It is not ineffective assistance of counsel to fail to make a meritless objection. *Strickland*, 466 U.S. at 691.

---

[10]  While the Court is of the opinion that the § 2255 motion could be disposed of on the strength of the evidence adduced at trial alone, in an abundance of caution, the Court will address seriatim each of Solomon's claims of ineffective assistance of counsel.

[11]  At trial, Solomon was represented by three well respected attorneys:  Martin A. Dietz, Esquire; Robert E. Stewart, Esquire; and Anthony L. Ricco, Esquire.

2.    _Watson Challenge_

Solomon asserts that in light of _Watson v. United States_, 552 U.S. 74 (2007), his

trial counsel was ineffective for their "failure to object to the charges and subsequent sentence

brought against the petitioner for using a firearm in furtherance of a drug trafficking crime."  Br.

at 29.  Specifically Solomon contends that counsel's "failure to object and/or challenge the trade

of drugs for guns prejudice[d] the petitioner causing him to be tried for conduct not prohibited by

law resulting in, inter alia, life imprisonment."  _Id_. at 30.

To better understand Solomon's argument, a brief summary of the pertinent law

as it relates to § 924(c) is helpful.

Section 924(c) of Title 18 of the United States Code imposes a mandatory

consecutive sentence for "any person who, during and in relation to any . . .  [federal] drug

trafficking crime, uses or carries a firearm . . . ." 18 U.S.C. § 924(c)(1).  In December of 1995 in

the case of _Bailey v. United States,_ 516 U.S. 137 (1995), the United States Supreme Court

interpreted the word "use" in § 924(c) to exclude the mere possession of a firearm near the scene

of drug trafficking and required "active employment of the firearm by the defendant, a use that

makes the firearm an operative factor in relation to the predicate offense."  _Watson_, 552 U.S. at

76–77 (discussing _Bailey v. United States_, 516 U.S. 137 (1995)).[12]

In another case interpreting the word "use" in § 924(c), the Supreme Court, prior

to _Bailey,_ held in _Smith v. United States_, 508 U.S. 223 (1993), that the exchange of a gun to

obtain drugs constitutes "use" of a firearm in relation to a drug trafficking crime.  Fourteen years

---

[12]  In response to _Bailey_, Congress in 1998 amended § 924(c) to add a provision criminalizing
the possession of a firearm in furtherance of a federal drug trafficking crime.  Criminal Use of
Guns, Pub. L. No. 105-386, § 1(a), 112 Stat. 3469 (Nov. 13, 1998); _Watson_, 552 U.S. at 77 n.3
(discussing the 1998 amendment).  This amendment did not affect the "use and carry" prong of §
924(c).  _See Watson_, 522 U.S. at 77 n.3.

later in *Watson*, the Supreme Court addressed the converse of that factual scenario and held that the exchange of drugs to obtain a gun does <u>not</u> constitute "use" of a firearm within the meaning of § 924(c).  *Watson*, 552  U.S. at 79 (" `A seller does not "use" a buyer's consideration' . . . .") (quoting *United States v. Westmoreland*, 122 F.3d 431, 436 (7th Cir. 1997)).

Solomon argues that under *Watson* his conviction was unlawful and, therefore, his counsel was ineffective for their failure to object to the charges and subsequent sentence "brought against petitioner for using a firearm in furtherance of a drug trafficking crime."  Br. at 29.

The Court finds that Solomon has taken an improvidently narrow interpretation of *Watson*, and that *Watson* does not avail Solomon. *Watson* addressed a set of facts very similar to the one presented here, but with one very significant difference.  While both Solomon and Watson exchanged drugs in return for a firearm, Watson was charged only under § 924(c)(1)(A), but not charged under § 2 as an aider and abettor.

Solomon ignores the fact that he was charged in Count Six  under 18 U.S.C. § 924(c)(1)(A), and with aiding and abetting a violation of § 924(c)(1)(A).  Nothing in § 924(c)(1)(A) or the aiding and abetting statute, 18 U.S.C. § 2, which the superseding indictment also cited, suggests that a person may not be convicted and sentenced under § 924(c)(1)(A) for aiding and abetting another person's violation of the statute.  *See United States v. Redmond*, 2009 WL 3671153, at * 2. (N.D. Ill. 2009).

The plain language of § 2 does not carve out particular classes of substantive offenses and applies generally to federal offenses.  Indeed, the Supreme Court, post-*Watson*, affirmed a conviction under § 924(c) where the Court noted in passing that the defendant had been charged under § 924(c)(1)(A)(iii) and 2.  *See Dean v. United States*, -- U.S. --, 129 S. Ct.

1849, 1852 (2009).  *See also United States v. Moreta*, 310 Fed. App'x 534, 536 (2009) ("We have held that an individual who does not personally use or carry a firearm may still be found guilty of violating 18 U.S.C. § 924(c)(1) on an aiding and abetting theory if the actions of the defendant who did use or carry a firearm were sufficiently intertwined with, and his criminal objectives furthered by the actions of the participant who did carry and use the firearm.") (quoting *United States v. Gordon*, 290 F.3d 539, 547 (3d Cir. 2002)).

Aiding-and-abetting liability is broad.  Under 18 U.S.C. § 2, a defendant may be treated as a principal under two separate subsections:

(a) Whoever commits an offense against the United States or aid, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

Therefore, under § 2, Solomon could be held liable for another person's violation of § 924(c) if Solomon's actions were sufficiently intertwined with, and his criminal objectives furthered by the actions of the participant who did carry and use the firearm.  *Moreta*, 310 Fed. App'x at 536.  In this case, the evidence at trial revealed that Keith Edwards owned a 9 millimeter, semiautomatic Glock firearm.  Solomon purchased the Glock firearm from Edwards in exchange for 1 ounce of cocaine.  Solomon, in turn, gave the fully loaded Glock firearm to Hanner, who, in turn, used the firearm to kill Frank Helisek, Jr.  The evidence established a chain of events which clearly demonstrated that Solomon's actions were sufficiently intertwined with, and his criminal objectives were furthered by, the actions of Keith Edwards, the person who used, or handed over, the firearm.

Aiding and abetting liability was not at issue in *Watson* because the person who handed over the gun to the defendant was a government agent, and a defendant cannot be found to have aided and abetted a government agent who could not have committed the crime as a principal.

In this case, the jury was correctly instructed regarding the elements of the charged § 924 offense. The jury was also correctly instructed regarding what it took to find Solomon guilty of Count Three under the aiding and abetting theory.

Thus, the Court finds that sufficient evidence was presented at trial to support the conviction of Solomon on Count Three and this claim is without merit.

3. *Failure of Trial Counsel to Object to Court's "Amendment" of the Indictment*

Solomon argues that his trial counsel were ineffective when they failed to object to the Court's constructive amendment of Count Six of the Superseding Indictment. Br. at 30 - 35. Specifically, Solomon argues that his counsel failed to object when the Court fatally "amended the charging elements" of Count Six when it (i) used the word "solicitation" and (ii) used the phrase "in furtherance of" rather than "during and in relation to."

A constructive amendment occurs when "jury instructions at trial modify essential terms of the charged offense in such a way that there is a substantial likelihood that the jury may have convicted the defendant for an offense differing from the offense the indictment returned by the grand jury actually charged." *United States v. Daraio*, 445 F.3d 253, 259–60 (3d Cir. 2006).

Solomon contends that by using the word "solicitation" in its Charge to the jury, the Court "broadened the charges that were returned by the grand jury." Br. at 32. As the government explained throughout trial, and again during the charge conference, its theory of the case was that Solomon, through his "solicitation" of Hanner, aided and abetted in the murder of

26

Frank Helisek, Jr.  During the charge conference, the AUSA specifically stated that the

government's theory against Solomon on Count Six was "solicitation of the crime of using a

firearm" rather than "charging him with using a firearm."  Transcript of Jury Trial Proceedings at

34 (ECF No. 859).

Accordingly, in its Instructions to the jury when explaining the government's

theory of aiding and abetting of Count Six, the Court stated:

> In this case, the Government alleges that Jelani Solomon is guilty of Count
> 6 of the superseding indictment because he <u>solicited</u> Claron Hanner to commit
> murder with a firearm during and in relation to a drug trafficking crime.  In order
> to find Jelani Solomon guilty of using a firearm during and in relation to a drug
> trafficking crime and causing the death of another person through the use of said
> firearm, you must find that the Government proved beyond a reasonable doubt
> each of the following four requirements.
>
> One, that Claron Hanner committed the offense charged in Count Six . . .
>
> Second, that Jelani Solomon knew that the offense charged was going to
> be committed by Claron Hanner.
>
> Three, that Jelani Solomon did some act for the purpose of aiding and
> abetting, <u>soliciting</u>, encouraging or facilitating Claron Hanner in committing the
> offense charged in Count 6 of the superseding indictment and with the intent that
> Claron Hanner commit the offense.
>
> And fourth, that Jelani Solomon's acts did in some way assist, aid,
> facilitate, or encourage Claron Hanner to commit the offense of murder with a
> firearm during and in relation to a drug trafficking crime.  Jelani Solomon's acts
> themselves need not be against the law.
>
> If the evidence shows that Jelani Solomon knew that the offense was being
> committed or was about to be committed but does not also prove beyond a
> reasonable doubt that it was Jelani Solomon's intent and purpose to aid, assist,
> encourage, <u>solicit</u> or facilitate or otherwise associate himself with the offense, you
> may not find Jelani Solomon guilty of the offense as an aider and or abettor.
>
> The government must prove beyond a reasonable doubt that Jelani
> Solomon in some way participated in the offense committed by Claron Hanner as
> something Jelani Solomon wished to bring about and make succeed.

Transcript of Jury Trial Proceedings at 54-62, ECF No. 860 (emphasis added).

Solomon argues that " `solicitation' was never returned by the grand jury" and, therefore, it was improper for the Court to include that word in its Charge.  Br. at 31.  The Court finds this argument to be without merit because "solicit" as used by the government and the Court was used in a general sense to instruct the jury as to what  Defendant actually was alleged to have done to aid and abet in the offense of murder.

Title 18, United States Code, § 2(a), reads as follows:  "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."   As explained in Wharton's Criminal Law,

> [T]he terms "aid" and "abet" are frequently used interchangeably, although they are not synonymous.  To "aid" is to assist or help another.  To "abet" means, literally, to bait or excise, as in the case of an animal.  In its legal sense, it means to encourage, advise, or instigate the commission of a crime.

1 Charles E. Torcia, Wharton's Criminal Law § 29, at 181 (15th ed. 1993) (emphasis added).

"Solicitation" is defined as "urging, advising, commanding, or otherwise inciting another to commit a crime. " Black's Law Dictionary 1530  (9th ed. 1990) (emphasis added). The inclusion of  the word "solicitation" in the "aiding and abetting" instruction was merely a descriptive, synonymous term of the word "abet."   Therefore, the Court finds that Solomon's argument is without merit.

Likewise, the Court finds that there is no merit to Solomon's second argument that the Court constructively amended Count Six when it used the phrase "in furtherance of a drug trafficking crime" in the verdict form, rather than the phrase "in relation to a drug trafficking crime."   The Court instructed the jury on Count Six as follows:

Count 6 of the superseding indictment reads as follows:

On or about January 19, 2004, in the Western District of Pennsylvania, the defendants, Jelani Solomon and Claron Hanner, knowingly did use a firearm, that

is a Glock 9-millimeter handgun, <u>during and in relation to a drug trafficking crime</u> for which they may be prosecuted in a Court of the United States. That is, conspiracy to possess with intent to distribute and distribute five kilograms or more of a mixture and substance containing a detectible amount of cocaine, a Schedule II controlled substance, contrary to the provisions of Title 21, United States Code, Section 848, and Title 18, United States Code, Section 2, as charged in Count 1 of this superseding indictment, and in the course of said offense, did cause the death of a person, namely Frank Helisek, Jr., which killing was a murder as defined in Section 1111 of Title 18, United States Code, in that the defendants, Jelani Solomon and Claron Hanner, with malice aforethought, did unlawfully kill Frank Helisek, Jr., by shooting him with the firearm willfully, deliberately, maliciously, and with premeditation.

In violation of United States Code, Sections 924(c)(1)(A), 924(j)(1), and 2.

Section 924(c)(1)(A) of the subject statute provides:

Any person, who <u>during and in relation to a drug trafficking crime</u> for which the person may be prosecuted in a Court of the United States, uses or carries a firearm, shall be guilty of an offense against the United States.[13]

. . . .

The essential elements of Section 924(c)(1) of 18 United States Code are:

First: that on or about the date alleged in the superseding indictment, Claron Hanner and/or Jelani Solomon, knowingly used or carried a firearm.

---

[13] 18 U.S.C. § 924(c)(1) provides, in pertinent part:
   (a) Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime-(i) be sentenced to a term of imprisonment of not less than 5 years[.]

The pre-1998 version of § 924(c)(1) made it an offense only to *use or carry* a firearm *during and in relation to* the predicate crime. The *Bailey* decision's narrow interpretation of "use" under § 924(c)(1) prompted Congress to amend the statute in 1998 to add language directed to *possessing* a firearm "in furtherance of" the predicate crime.

And second: that Claron Hanner and/or Jelani Solomon used or carried the firearm <u>during and in relation to a drug trafficking crime</u> for which he may be prosecuted in a Court of the United States.

With regard to the second element, the government must prove beyond a reasonable doubt that the firearm was used or carried <u>during and in relation to the underlying drug trafficking crime</u>, which is conspiracy to distribute five kilograms or more of cocaine.

Transcript of Trial Proceedings at 54-56 (emphasis added) (ECF No. 860).

The verdict form, however, read as follows:

As to Count Six of the Superseding Indictment, which charges the Defendant, Jelani Solomon, in and around January 19, 2004, with having solicited, aided, abetted, encouraged or facilitated the crime of using a firearm <u>in furtherance of</u> a drug trafficking crime, that is conspiracy to possess with intent to distribute and distribute 5 kilograms or more of cocaine, and having caused the death of Frank Helisek, Jr., through the use of said firearm, in violation of Title 18, United States Code, Sections 924(c)(1)(A), 924(j)(1) and 2, we find that Defendant is:

NOT GUILTY _____

GUILTY BEYOND A REASONABLE DOUBT _____

Verdict of the Jury, ECF No. 665 (emphasis added).

Solomon argues that the verdict form impermissibly cross-matched the elements from the first prong of § 924(c) (i.e., "in relation to a drug trafficking crime") with an element from the second prong (i.e., "in furtherance of any such crime"). According to Solomon, this created a whole new "offense" which was not contained in the Superseding Indictment.

The Court finds that although the language of the Instructions differs somewhat from the language of the verdict form, there was no instructional error in the Count Six instruction. However, assuming *arguendo*, that there was error, the Court finds that there was no instructional error so highly prejudicial in the Count Six instruction that would warrant relief under § 2255. Critically, when instructing the jury on the precise elements for conviction on

Count Six as charged in the Superseding Indictment, the Court properly stated the standard for conviction. The instructions also specifically defined the phrases "used, uses or carries a firearm" and "during and in relation to," which strongly indicated to the jury that those were the key inquiries for their consideration. These elements were also reinforced by other portions of the instructions, as well as the closing argument of the AUSA. Viewed in light of the repeated, correct instructions and statements on § 924(c), the Court finds that Solomon has failed to meet his burden of showing that the passing reference to the "in furtherance" prong constructively amended his indictment.

Moreover, the Court finds that Solomon has failed to demonstrate that the inclusion of the "in furtherance" language " ' broaden[ed] the possible bases for conviction from that which appeared in the indictment.'" *United States v. Scott*, 463 Fed. App'x. 85, 88 (3d Cir.), *cert. denied,* -- U.S. --, 132 S. Ct. 2415 (2012) (citing *United States v. McKee*, 506 F.3d 225, 229 (3d Cir. 2007)). As best explained by our appellate court,

> On the contrary, we conclude based on the record evidence in this case that a jury finding that [defendant] carried the firearm "in furtherance" of the drug trafficking crime would necessarily subsume a finding that he carried the firearm "during and in relation to" that crime. In other words, the inclusion of the "in furtherance" language effectively narrowed the possible grounds for conviction because it suggests a higher standard of conduct than that required by the "during and in relation to" language. *See United States v. Loney*, 219 F.3d 281, 287 (3d Cir.2000) (noting that "Congress may well have intended 'in furtherance' to impose a more stringent standard than 'in relation to.' ").

*Scott*, 463 Fed. App'x at 88.

For these reasons, the Court finds that there was no constructive amendment of Count Six of the Superseding Indictment and it was not ineffective for counsel to fail to make a meritless objection. *Strickland*, 446 U.S. at 699.

4.     *Failure of Trial Counsel to Require Prosecution to Prove All Elements - Apprendi Challenge*

Solomon contends that his trial counsel were ineffective when they failed to present an *Apprendi*-type defense to the elements of Count Six.  Br. at 38.   In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Id*. at 490.  Solomon was charged in Count Six of the Superseding Indictment with using a firearm during and in relation to a drug trafficking crime and causing the death of a person through the use of said firearm, in violation of Title 18, United States Code, Sections 924(c)(1)(A), 924(j)(1), and 2.  He was not charged with murder, 18 U.S.C. § 1111.

Solomon argues that because section 924(j)(1) refers to section 1111,[14] "it is clear that 18 U.S.C. Sec. 1111 is an element of the 924(j) offense" and, thus, the issue of whether "said killing was conducted in the maritime or territorial jurisdiction of the United States,"  as required under 18 U.S.C. § 1111(b), should have been submitted to the jury.[15]  Br. at 38.  "Absent the jurisdictional fact / element the instructions given to the jury was insufficient and in violation of *Apprendi*, and the due process clause."  *Id*. at 38.

---

[14]  Title 18, United States Code, § 924(j)(1), provides for an increased penalty beyond the statutory minimum, as follows:

> A person who, in the course of a violation of [924(c)] causes the death of a person through the use of a firearm, shall -
>      (1) if the killing is murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life.

[15]  Title 18, United States Code, § 1111, states in relevant part:

> (a)  Murder is the unlawful killing of a human being with malice aforethought. . .

> (b)  Within the special maritime and territorial jurisdiction of the United States, . . . .

The Court finds that Solomon's argument fails for a number of reasons. First, under 18 U.S.C. § 3231,[16] the jurisdictional provision for federal crimes, federal courts have subject-matter jurisdiction over violations of 18 U.S.C. § 924(j). Second, the "special maritime" and "territorial jurisdiction" language of 18 U.S.C. § 1111 is not incorporated by § 924(j) because § 924(j) only incorporates the <u>definition</u> of murder contained in 18 U.S.C. § 1111(a). *See United States v. Young*, 248 F.3d 260, 274 (4th Cir. 2001) (stating that when a federal statute refers to the definition portion of 18 U.S.C. § 1111, it is only referring to subsection (a)). The "special maritime" and "territorial jurisdiction" language of subsection (b) of 18 U.S.C. § 1111 is not a definitional section, but rather merely provides the penalties for murders committed within the special maritime and territorial jurisdiction of the United States. *See also United States v. Ostrander*, 411 F.3d 684, 687 (6th Cir. 2005) (holding that § 924(j)(1) only incorporates the definition of murder contained in § 1111(a)); *United States v. Williams,* 2009 WL 2767724 (C.D. Cal. 2009) (same); *United States v. Oslund,* 2008 U.S. Dist. LEXIS 56361 (D. Minn. July 22, 2008) (same); *United States v. Porter*, 2007 U.S. Dist. LEXIS 93277 (E.D. La. Dec. 7, 2007) (same); *United States v. Tuck Chong*, 123 F. Supp.2d 563, 566 (D. Hawaii 1999) (same).

Finally, "section 924(j)(1) incorporates the jurisdictional requirement from section 924(c)." *See* 18 U.S.C. § 924(c) ("[A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the

---

[16] Title 18, United States Code, § 3231, provides as follows:

> The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

> Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof.

United States . . . .").ʺ *Young*, 248 F.3d at 275.  Accordingly, Solomon's argument that his conviction under § 924(j) required proof that Frank  Helisek, Jr., was murdered "within the special maritime and territorial jurisdiction of the United States"  is without merit because the jurisdictional element of a § 924(j) violation in this case had already been satisfied through the predicate offense of the drug conspiracy, a crime of violence as defined for purposes of § 924(c).  *Id.*

Similarly, Solomon's claim that neither the Superseding Indictment nor the Jury Charge specified the type of murder fails.  Title 18, United States Code, § 1111 specifically provides, in relevant part, as follows:

> (a)  Murder is the unlawful killing of a human  being with malice aforethought.  Every murder perpetrated by . . . any other kind of willful, deliberate, malicious, and premeditated killing . . . is murder in the first degree.

> Any other murder is murder in the second degree.

18 U.S.C. § 1111.

Count Six of the Superseding Indictment specifically charged that "the defendants, Jelani Solomon and Claron Hanner, with malice aforethought, did unlawfully kill Frank Helisek, Jr., by shooting him with the firearm willfully, deliberately, maliciously and with premeditation."  Further, the jury was instructed that "[i]n determining whether the killing was with malice aforethought, you may consider the use of the weapon or instrument, and the manner in which the death was caused."  Transcript of Jury Trial Proceedings  at 57-58 (ECF No. 860).

In convicting Solomon of Count Six, the jury necessarily had to find (i) that the killing of Frank Helisek, Jr., was murder and (ii) that the murder was with malice aforethought.  Although the Court did not expressly differentiate between first and second degree murder in its instructions, the instructions and the subsequent findings of the jury clearly encompassed the

34

elements of first degree murder.  Furthermore, § 924(j) specifically provides that "if the killing is

a murder (as defined in section 1111)," the defendant shall be "punished by death or by

imprisonment for any term of years or for life."  Accordingly, Solomon points to no cognizable

*Apprendi* error in this regard.

     5.       <u>*Failure of Trial Counsel to Object to Hearsay Testimony*</u>

     Solomon argues that "the government presented alleged co-conspirators'

testimony" and that all such testimony "constituted hearsay . . . ."  Br. at 40.  Solomon fails to

identify the witness / alleged co-conspirator and  also does not identify which statements in

particular were improperly admitted during trial.  Vague and conclusory allegations are

insufficient for a § 2255 motion. *United States v. Thomas,* 221 F.3d 430, 337 (3d Cir. 2000); see

also Rule 2(b)(2) of the rules governing § 2255 proceedings ("[t]he motion must . . . state the

facts supporting each ground" for relief).

     Furthermore, it appears that Solomon is arguing that because the conspiracy

ended in 2005, any testimony presented to the grand jury and /or during trial was presented "well

after the termination of the alleged conspiracy."  Br. at 42.

     Under Rule 801(d)(2)(E), the out-of-court statements of a defendant's co-

conspirators are not excluded as hearsay.  Before any such statement may be admitted, however,

the proponent must establish by a preponderance of the evidence that (i) the conspiracy existed;

(ii) both the defendant and the declarant were members of the conspiracy; and (iii) the statement

was made in the course of the conspiracy and in furtherance of the conspiracy. *United States v.

Bobb*, 471 F.3d 491, 498 (citing *United States v. McGlory*, 968 F.2d 309, 333 (3d Cir.1992)).

While a casual conversation between co-conspirators does not meet the "in furtherance"

requirement, "statements between co-conspirators which provide reassurance, serve to maintain

trust and cohesiveness among them, or inform each other of the current status of the conspiracy further the ends of the conspiracy and are admissible so long as the other requirements of Rule 801(d)(2)(E) are met." *Bobb*, 471 F.3d at 498 (citing *United States v. Ammar*, 714 F.2d 238, 252 (3d Cir. 1983)).

While statements made after the conspiracy has ended generally are not admissible under Rule 801(d)(2)(E), recounting events which occurred during the course of the conspiracy, even if recounted after the end of the conspiracy, are admissible. *See generally United States v. Weaver*, 507 F.3d 178 (3d Cir. 2007) (discussing parameters of Rule 801(d)(2)(E).

Additionally, Solomon argues that his role in the conspiracy terminated upon his arrest in January 2004 and that the government never presented any evidence in support of his involvement in the conspiracy in the year 2005. However, the arrest of one co-conspirator does not necessarily terminate the conspiracy. The test is not the arrest of one or more of the co-conspirators but whether the remainder of the co-conspirators are able to continue with the conspiracy. The statements of co-conspirators still at large are admissible. *United States v. Hamilton*, 689 F.2d 1261 (6th Cir. 1982*); United States v. Taylor*, 802 F.2d 1108 (9th Cir. 1986); *United States v. Thompson*, 533 F.2d 1006 (6th Cir 1976).

For these reasons, the Court finds that Solomon's claim is without merit.

6.      *Failure of Trial Counsel When They Advised Petitioner to Stipulate to Prior Felonies*

Solomon next argues that his trial counsel's advice to stipulate to the prior felony conviction as referenced in Count Two of the Superseding Indictment was "unsound and

prejudiced [his] case." Br. at 45. Solomon contends that Count Two charged him as a "felon in receipt of a firearm."

Count Two of the Superseding Indictment charged that Solomon while <u>under indictment</u> for the crime of possession with intent to deliver a controlled substance, he did knowingly and willfully receive a firearm that had been shipped in interstate commerce. ECF No. 25. Solomon was <u>not</u> charged in Count Two under 18 U.S.C. § 922(g) of being a felon in receipt of a firearm.

The Court instructed the jury as to the elements of Count Two, including the need of the jury to determine whether that Solomon had been indicted by local authorities. Transcript of Jury Trial at 46, ECF No. 860.

Thus, Solomon's claim has no merit as the trial record does not reflect that he stipulated to the fact that he was under indictment.

Solomon also appears to claim that his attorneys were ineffective at sentencing because they did not object to consideration of prior offenses for the purpose of sentencing, which resulted in his characterization as a career offender. Br. at 45 - 47.

It is correct that under the advisory Sentencing Guidelines, Solomon was deemed a career offender pursuant to U.S.S.G. § 4AB1.1. However, Solomon's sentence did not turn on his status as a career offender. The base offense level for a conviction under 18 U.S.C. §§ 924(c)(1)(A), 924(j)(1), and 2 is a level 43, which was greater than the base offense level in the career offender table at U.S.S.G. § 4B1.1(b). Additionally, Solomon had a total of 18 criminal history points, which resulted in a criminal history category of VI, which is the same criminal history category as a career offender. The advisory guideline range of imprisonment for a base

offense level of 43 and a criminal history category of VI is life imprisonment. At Count Six, the maximum statutory penalty is death, or imprisonment for any term or years, or life.

For these stated reasons, the Court finds that Solomon's claim is without merit.

7. *Failure of Trial Counsel to Subject Prosecution's Case to A Meaningful Adversarial Testing*

Solomon contends that "trial counsel failed to subject the prosecution to an adversarial testing." Br. at 50. The government argues that the record speaks for itself and contends that ample evidence of record reflects that defense counsel subjected the prosecution's case to meaningful adversarial testing.

A criminal defendant's Sixth Amendment right to counsel is violated, and prejudice is presumed, when defense counsel utterly fails to test the prosecution's case. *See Bell v. Cone,* 535 U.S. 685 (2002); *United States v. Cronic*, 466 U.S. 648, 659 (1984).

In considering this issue, the Court reviewed the pleadings filed in the case, and the transcripts from Solomon's pre-trial, trial, and sentencing hearings. From this review, the Court finds that Solomon's trial counsel actively advocated in all phases of the proceedings. In fact, the record reflects that Solomon's counsel zealously represented him at every stage of this case. Accordingly, the Court concludes that the record in this case establishes that defense counsel subjected the prosecution's case to a meaningful adversarial test. Therefore, Solomon is not entitled to relief in this case.

8.    *Failure of Trial Counsel To Challenge the Forfeiture Count of the Indictment and the Companion Civil Proceeding*

The Superseding Indictment in this case set forth a forfeiture count in which the government contended that currency, real property, and personal property belonging to Solomon was subject to criminal forfeiture under 21 U.S.C. § 853(a)(1).

On October 26, 2005, the government also filed a civil Complaint in Forfeiture in which it sought forfeiture of six (6) parcels of Real Property on the basis that the real properties constituted, or were traceable to, the illegal proceeds generated by Solomon and/or others through their unlawful distribution of cocaine and crack in violation of 21 U.S.C. §§ 841(a)(1) and/or 846.  *See* Case No. 2:05-cv-1498.

Solomon argues that his attorneys were ineffective because they failed  to challenge the forfeiture count in the Superseding Indictment and they did not challenge the Court's jurisdiction to "entertain" the civil action.  Br. at 65.  Solomon's claims as to both the criminal forfeiture and the civil forfeiture are without merit.

First, courts have uniformly held that a federal prisoner cannot challenge a restitution order on constitutional grounds under § 2255 because forfeiture, like fines or restitution, is merely a financial penalty and not a physical constraint on liberty. *See United States v. Bernard*, 351 F.3d 360, 361 (8th Cir. 2003); *Kamiski v. United States*, 339 F.3d 84, 87–89 (2nd Cir. 2003); *United States v. Thiele*, 314 F.3d 399, 402 (9th Cir. 2002); *United States v. Hatten*, 167 F.3d 884, 887 (5th Cir. 1999);  *Blaik v. United States*, 161 F.3d 1341, 1342–43 (11th Cir. 1998); *Barnickel v. United States*, 113 F.3d 704, 705–706 (7th Cir. 1997); *Smullen v. United States*, 94 F.3d 20, 25–26 (1st Cir. 1996); *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995).

Likewise, Solomon's allegation of ineffective assistance of counsel with regard to the companion civil proceeding is also not cognizable on a § 2255 motion.   Solomon had no right to appointed counsel.  Thus, the Sixth Amendment is not implicated.

The Court finds that Solomon's argument is without merit and will be denied.

9.    *Cumulative Effect of Errors*

Solomon's ninth and final claim of ineffective assistance of counsel is that the cumulative effect of all these failures "denied him the due process rights guaranteed by the United States Constitution." Br. at 51.   The United States Court of Appeals for the Third Circuit has stated in dicta that a district court may consider the cumulative effect of multiple ineffective assistance of counsel claims if none on its own is sufficient to rise to a constitutional violation. *See United States ex rel. Sullivan v. Cuyler*, 631 F.2d 14, 17 (3d Cir. 1980) (stating that "unified consideration of the claims in the petition well satisfies the interests of justice because the cumulative effect of the alleged errors may violate due process").

In this case, however, the Court has yet to find a single instance of incompetence, so the cumulative effect is the equivalent of adding multiple zeros.  Therefore, Solomon's ninth ineffectiveness claim is denied.

**D.    Claims of Ineffective Assistance of  Appellate Counsel[17]**

Solomon argues that his "appellate counsel provided ineffective assistance by failing to properly present meaningful issues on appeal."  Br. at 5.

To demonstrate that appellate counsel was deficient under *Strickland*, a defendant must do more than allege that counsel failed to raise every non-frivolous issue, insofar as appellate counsel is under no obligation to raise all issues, but may pick and choose so as to maximize the

---

[17]  On appeal, Solomon was represented by Martin A. Dietz, Esquire, and Robert E. Stewart, Esquire.

chances of a successful appeal. *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance be overcome." *Id.* To establish prejudice on a claim of ineffective assistance of appellate counsel, a defendant must show that "there is a reasonable probability that the result of the appeal would have been different had counsel's stewardship not fallen below the required standard." *United States v. Mannino*, 212 F.3d 835, 845 (3d Cir. 2000)

Solomon repeats his claim of *Watson* error due to his appellate counsel's failure to raise the issue on appeal. Similarly, he claims ineffective assistance of appellate counsel due to failure to raise the claim of an amended indictment due to the inclusion of the term "solicitation" in the jury instructions.

As hereinabove discussed at length, *Watson* is not controlling in the factual scenario presented in this case. Therefore, the Court finds that neither trial counsel nor appellate counsel erred in failing to raise this issue. Likewise, as also discussed *above,* the use of the term "solicitation" in the jury instructions did not amend the indictment. Because the Court has found that Solomon's claims regarding *Watson* and the use of the term "solicitation" in the jury instructions to be without merit, his claim regarding the inadequacy of his appellate counsel likewise must fail. Solomon simply has not overcome the presumption that counsel's failure to assert these issues on appeal was an exercise of sound appellate strategy.

Accordingly, the Court finds that Solomon's argument is without merit and will be denied.

**E.**     **Claims of Trial Court Error**

     1.      *The District Court Did Not Amend The Superseding Indictment by*

*"Misdescribing" The Element of the Offense in a Jury Instruction*

     This argument is a mirror of the argument made by Solomon that his trial and

appellate attorneys were ineffective for failing to object to the Court's amendment of the

indictment. As hereinabove explained in great detail, the Court did not amend the Superseding

Indictment. Therefore, Solomon's claim that the Court committed error is meritless and will be

denied.

     **2**.      *Claims that District Court Abused Its Discretion When it Allowed 404(b)*

*Evidence To Be Presented at Trial*

     Solomon argues that "the trial court abused its judicial discretion by permitting

influential testimonial evidence of law enforcement agents that did not conform with the purpose

of the [Rule 404(b)]." Br. at 62. The only detail Solomon provides is as follows:

> During trial the government called law enforcement agents Brian
> Jamerson (sic), patrol officer; Joseph Kozlina, Attorney General employee; John
> Clay, Assistant District Attorney for Beaver County, PA; to provide testimony of
> the petitioner's prior crimes, wrongs, or acts. Their professional status and sworn
> testimony caused unfair prejudice to the petitioner where their professional status
> influenced the minds of the jury.

Br. at 61-62.

     First, Solomon's claim is vague and conclusory and, as such, does not provide a

basis for relief under § 2255 motion. *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000).

     Next, the testimony of the three law enforcement agents was not Rule 404(b)

evidence. Evidence of a criminal defendant's uncharged conduct, including crimes, wrongs or

other acts, may be admissible if the evidence is intrinsic to the charged offense. *United States v.*

*Green*, 617 F.3d 233 (3d Cir.), *cert. denied*, 131 S. Ct. 363 (2010). In *Green*, the United States

Court of Appeals for the Third Circuit explained that "evidence is intrinsic if it 'directly proves' the charged offense" or are "uncharged acts performed contemporaneously with the charged crime" and "facilitate the commission of the charged crime." *Id.* at 248-49 (internal quotation marks and citations omitted). "Rule 404(b) does not extend to evidence of acts which are intrinsic to the charged offense." *United States v. Cross*, 308 F.3d 308, 320 (3d Cir. 2002).

All three law enforcement agents testified to facts and circumstances which provided the jury with a "complete story of the crimes" charged against Solomon and as such, the testimony was "intrinsic evidence" and was not analyzed under Rule 404(b). *See United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (evidence "necessary to complete the story of the crime on trial"); *United States v. Lipford*, 203 F.3d 259, 268 (4th Cir. 2000) (defendant's shooting of police officer during execution of search warrant "completed the story" with respect to scope of drug conspiracy); *United States v. Guerrero*, 169 F.3d 933, 94344 (5th Cir. 1999) (defendant's connection to another individual involved in charged robberies completed "the story of the crime").

For example, Agent Kozlina testified that he was part of the investigative team which utilized Shawn Helisek as an informant against Jelani Solomon and former Chief of Police John Clay testified that Shawn Helisek was to be a witness in Solomon's drug trial, scheduled to commence on January 20, 2004.[18] *See* Transcript of Jury Trial, ECF No. 853. Officer Brian Jameson provided testimony regarding the close relationship between Solomon and one of his co-conspirators, Paul Dudash. He also testified that in February 2001, he issued a traffic citation to Solomon, that Paul Dudash was the passenger in the vehicle at the time, and that the vehicle

---

[18] On the morning of the trial, Solomon pled guilty and received a 2-1/2 - 6 year sentence of imprisonment with 9 years probation, and a $5,000 fine. He was taken into custody at that time.

Solomon was driving was registered to Dudash.  *See* Transcript of Jury Trial Proceedings, ECF No. 853.

Finally, to the extent that Solomon complains that the jury was improperly influenced by law enforcement testimony, the Court instructed the jury on this specific point. *See* Transcript of Jury Trial Proceedings at 17, ECF No. 860.  Solomon offers no argument that the jury did not follow the Court's instructions.  Moreover, had he raised such a claim, it would have been rejected by the Court as it is presumed that juries follow the Court's instructions.  *See United States v. Hernandez*, 176 F.3d 719, 738 (3d Cir. 1999).

For these reasons, the Court finds that Solomon's argument is without merit and will be denied.

F.    *Claims that the District Court Lacked Jurisdiction to Sentence Defendant For a Violation of 924(c) Offense*

Relying on *Watson*, Solomon argues that the Court lacked jurisdiction to impose a sentence at Count Three.  However, as hereinabove discussed at length, *Watson* is not controlling in this case.   Solomon's conviction at Count Three is firm and therefore the Court had jurisdiction over Count Three for the purpose of sentencing.

The Court finds that Solomon's argument is without merit and will be denied.

CONCLUSION

Despite some creative arguments, the Court finds that Solomon's § 2255 motion is without merit.  The Court also finds that Solomon has failed to establish either prong of *Strickland*: (i) that his attorneys' representation fell below an objective standard of reasonableness and/or (ii) that counsel's errors, if any, deprived him of a fair trial.  Moreover, the Court likewise finds that Solomon has failed to overcome the presumption that his trial attorneys

and/or appellate attorneys rendered reasonable professional performance.  Likewise, the Court finds that Solomon has failed to establish that (i) the prosecutor's acts constituted prosecutorial misconduct; (ii) the Court committed trial errors and/or (iii) the Court lacked jurisdiction to sentence him on Count Three of the Superseding Indictment.

For all these reasons, Solomon's motion will be denied in its entirety.


### Certificate of Appealability

Upon the denial of a section 2255 motion by the district court, an appeal to the Court of Appeals is not permitted unless the petitioner obtains a certificate of appealability from "a circuit justice or judge." 28 U.S.C. § 2253(c).  "At the time a final order denying a petition under 28 U.S.C. § 2255 is issued, the district judge shall make a determination as to whether a certificate of appealability should issue." United States Court of Appeals for the Third Circuit Local Appellate Rule 22.2.  The application for such a certification should therefore be made to the district court in the first instance.  *See United States v. Williams*, 158 F.3d 736, 742 n. 4 (3d Cir. 1998).

The law permits the issuance of a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to establish the denial of a constitutional right, the mere allegation of a constitutional wrong, such as deprivation of the right to effective counsel, is insufficient; the petitioner must make a substantial showing of such an error in order to present an appeal.  *Santana v. United States*, 98 F.3d 752, 757 (3d Cir. 1996).  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court finds that reasonable jurists would not find this Court's assessment of Solomon's claims debatable or wrong.  Thus, the Court will not issue a certificate of appealability.

An appropriate Order follows.


McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **2: 05-cr-0385** |
| v. | ) | **2: 12-cv-0282** |
| | ) | |
| JELANI SOLOMON | ) | |

## ORDER OF COURT

AND NOW, this 7th day of March, 2013, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that:

1. Solomon's Motion to Vacate, Set Aside or Correct Sentence Pursuant to Title 28, United States Code, section 2255 is **DENIED AND DISMISSED**: and

2. A certificate of appealability is denied as Petitioner, Jelani Solomon, has not made a substantial showing of the denial of a Constitutional right.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:   Jelani Solomon
08820-068
U.S.P. Terre Haute
P.O. Box 33
Terre Haute, IN 47808

Laura Schleich Irwin
Assistant U.S. Attorney
Email: Laura.Irwin@usdoj.gov

Troy Rivetti**,**
Assistant U.S. Attorney
Email: Troy.Rivetti@usdoj.gov

Stephen R. Kaufman**,**
Assistant U.S. Attorney
Email: Steve.Kaufman@usdoj.gov